**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CR 12-00041-02-TUC-RCC [CRP] |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Alfredo Arreguin-Caperon, *aka Jose Luis Cardona-Enriquez,* | |
| Defendant. | |

Defendant Alfredo Arreguin-Caperon has entered a plea of guilty, pursuant to a written plea agreement, to the felony charge of possession with intent to distribute less than 50 kilograms of marijuana. At issue is whether duress negates the factual basis. Both sides submitted legal memoranda on this point *[Docs 40 & 41]*. For the reasons discussed below, this Court recommends that District Judge Collins, after his independent review and consideration, find an adequate factual basis and accept Defendant's plea of guilty.

Arreguin was arrested on December 7, 2011, thirty yards from two bundles of marijuana near Douglas, Arizona. A border patrol agent had observed two individuals carrying large bundles, drop the bundles and attempt to conceal themselves in desert vegetation. Complaint, Document 1. (Arreguin is listed in the Complaint under his aka, Jose Luis Cardona-Enriquez). The Complaint states, "(Arreguin) stated that he was coerced into smuggling marijuana into the country." On January 4, 2012, Arreguin and his co-defendant, Jesus Ivan Nevarez-Ramos were indicted for conspiracy and possession with intent to distribute 44 kilograms of marijuana.

On March 6, 2012, Arreguin appeared before this Court to enter his change of plea

1  pursuant to the standard back packer plea agreement, calling for sentencing ranges from
2  thirteen months and a day to 41 months incarceration.  According to defense counsel,
3  Arreguin is Criminal History Category I, for which the plea agreement provides a stipulated
4  sentence of thirteen months and one day in prison.  RT, March 6, 2012, p.10, ll. 3-10; RT,
5  April 10, 2012, p.7, ll. 14-21.[1]

6  The Court's taking of the factual basis during the first hearing appears at RT, March
7  6, 2012, pp. 14-19.  At that hearing, Arreguin maintained he was attempting to be smuggled
8  to Douglas, Arizona, and that when he got to the other side of the United States side of the
9  international boundary line, "these people came out and they told me I was going to carry
10 that (marijuana bundle) and they threatened me."  *Id*., p.15, ll. 21-23.  The smugglers
11 threatened to harm Arreguin and his family, although it was not clear that they smugglers
12 knew where his family lives.  Concerning the immediacy and viability of the threat, the
13 following colloquy took place:

>  Defendant Arreguin-Caperon: They said if I didn't carry that they were going to hurt me and my family.
>  The Court: And how would they hurt your family?  Did they have – do they know where your family live?
>  Defendant Arreguin-Caperon: Well, I don't know. I don't know. I didn't understand. I didn't understand, but that's the way the mafia works there on that part of the border.
>  The Court: So you were actually in fear of being harmed when they told you this?
>  Defendant Arreguin-Caperon: Yes.
>  The Court: Did you actually carry a bundle of marijuana for them?
>  Defendant Arreguin-Caperon: Yes.
>  The Court: Was the only reason that you carried the marijuana was because they threatened you with physical harm?
>  Defendant Arreguin-Caperon: Yes, I've never done that.
>  The Court: Did – were any of the people who you were dealing with, were any of them carrying weapons?
>  Defendant Arreguin-Caperon: Yes.
>  The Court: What kind of a weapon?
>  Defendant Arreguin-Caperon: Well, short ones, short.

---

[1] Mr. Duarte's explanation of criminal history in the two hearings was slightly different, but in both hearings, he maintained his client was Criminal History I.

        The Court: A pistol?
        Defendant Arreguin-Caperon: Yes.
        The Court: Was the person who made the threats against you carrying the pistol?
        Defendant Arreguin-Caperon: Yes, he was behind me pointing it at me and when I was arrested, they ran away and left me with the bundles.
        The Court: So as you were walking through the desert carrying the marijuana, the man was following you and pointing the pistol at you?
        Defendant Arreguin-Caperon: Yes.
        The Court: I think that's the end of that discussion, isn't it?
        Mr. Duarte: Sure is.

RT, p.16, ll. 20 — p. 18, l.4

On April 10, 2012, we tried again with the same written plea agreement. The factual basis discussion appears at RT, April 10, 2012, pp.14-23. This time, Arreguin said he was not trying to be smuggled into the United States, but instead planned to return to Mexico. *Id.*, p. 15, ll. 6-11. Arreguin was threatened by the smugglers at the site where he picked up the marijuana, but thereafter he did not see the people threatening him. *Id.*, pp. 15-16. Instead, an unarmed guide was with the two co-defendants to guide them to milepost 383. *Id.*, pp. 16-17. Arreguin initially indicated he was not concerned with the threats if he delivered the marijuana as directed, "because they were going to come over here (United States)." However, if he did not deliver that, the smugglers would be back in Agua Prieta, where Arreguin lived. *Id.*, pp. 19.

Defense counsel questioned his client to further elaborate the factual basis. *Id.*, pp. 20-21. Mr. Duarte established that Arreguin had four hours to discard the contraband and return to Mexico without delivering it. Thereafter, under questioning by the Court, for the first time, Arreguin said he was paid $1,000.00 to carry the marijuana. *Id.*, pp. 21-22. The factual basis colloquy concludes as follows:

        The Court: All right. So how did they find you that day to drive you down to the border?
        Defendant Arreguin-Caperon: I was just walking in downtown with a friend.
        The Court: And they just snatched you up off the street at

3

        random?
Defendant Arreguin-Caperon: Well, they stop and they say do you want to work and I said not really and then they said well if you don't work, then we'll harm you. But in the – at the same time, they said that they were going to pay and because of the need, that's when I said that I would..
The Court: All right. But you thought that you could leave the marijuana out in the middle of the desert and get back and be in Agua Prieta safe from these people?
Defendant Arreguin-Caperon: Yes.
The Court: All right. Very good.

RT, April 10, 2012, p. 23, ll. 8-23.

      The Government in its Memorandum In Support of Change of Plea *[Doc 40]* argues that Defendant's statements show he voluntarily carried the marijuana for money and there was no immediacy to the threat; Arreguin could have dropped the marijuana and returned to Agua Prieta. Defendant's Change of Plea Memorandum *[Doc 41]* argues that perfect duress does not exist because in the four hours he was carrying the marijuana, Arreguin had the opportunity to drop the marijuana and return to Mexico. Therefore, Mr. Duarte intends to use this for sentence mitigation, a largely irrelevant consideration given the stipulated sentence for Defendant Arreguin.

      The dramatically different version of events in the two hearings is quite troubling. It is also curious that in two hearings and in his questioning of his own client, Mr. Duarte never brought to the Court's attention that his client was to be paid $1,000.00. Nonetheless, Arreguin's assertion that he was to be paid to carry marijuana and that the people who threatened him did not follow him supports the finding of a factual basis in this case.

      Both counsel assert that duress is an affirmative defense that can be waived by the Defendant. Were the ultimate facts determined as they were in the March 6, 2012 hearing, this Court would disagree. When a defendant says he was carrying marijuana through the desert at gunpoint, that defendant simply is not admitting guilt. Hopefully, this Court will never again see such a scenario in a change of plea context, particularly in a case involving 44 kilograms of marijuana.

Because Arreguin admits he had a reasonable opportunity to discontinue the unlawful conduct and avoid the threat, this Court recommends that the Defendant's entry of plea of guilty be accepted and the factual basis be determined to be sufficient.  Sentencing is presently scheduled for JUNE 18, 2012 AT 9:00 A.M. BEFORE THE HONORABLE RANER C. COLLINS.

Pursuant to FED.R.CRIM.P., Rule 59(b)(2), the parties have fourteen (14) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court.  Any objections filed should be filed with the following case number: **CR 12-00041-TUC-RCC.**

DATED this 11th day of May, 2012.

_Charles R Pyle_
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE